## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUGUES GERVAT, derivatively on behalf of THE ESTÉE LAUDER COMPANIES INC., <br><br> Plaintiff, <br><br> v. <br><br> FABRIZIO FREDA, RONALD S. LAUDER, LEONARD A. LAUDER, WILLIAM P. LAUDER, JANE LAUDER, CHARLENE BARSHEFSKY, ANGELA WEI DONG, PAUL J. FRIBOURG, JENNIFER HYMAN, ARTURO NUÑEZ, RICHARD D. PARSONS, LYNN FORESTER DE ROTHSCHILD, BARRY S. STERNLICHT, JENNIFER TEJADA, RICHARD F. ZANNINO, ROSE MARIE BRAVO, WEI SUN CHRISTIANSON, GARY M. LAUDER, and TRACEY T. TRAVIS, <br><br> Defendants, <br><br> -and- <br><br> THE ESTÉE LAUDER COMPANIES INC., <br><br> Nominal Defendant. | Case No. _____ <br><br><br> **DEMAND FOR JURY TRIAL** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Hugues Gervat ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant The Estée Lauder Companies, Inc. ("Estée" or the "Company"), brings this Verified Shareholder Derivative Complaint against Defendants Fabrizio Freda ("Freda"), Ronald S. Lauder ("Ronald Lauder"), Leonard A. Lauder ("Leonard Lauder"), William P. Lauder ("William Lauder"), Jane Lauder ("Jane Lauder"), Charlene Barshefsky ("Barshefsky"), Angela Wei Dong ("Dong"), Paul J. Fribourg ("Fribourg"), Jennifer Hyman ("Hyman"), Arturo

Nuñez ("Nuñez"), Richard D. Parsons ("Parsons"), Lynn Forester De Rothschild ("Rothschild"), Barry S. Sternlicht ("Sternlicht"), Jennifer Tejada ("Tejada"), Richard F. Zannino ("Zannino"), Rose Marie Bravo ("Bravo"), Wei Sun Christianson ("Christianson"), Gary M. Lauder ("Gary Lauder"), and Tracey T. Travis ("Travis") (collectively, the "Individual Defendants" and together with Estée, "Defendants"), for and among other things, breaching their fiduciary duties to Estée stockholders and violating the federal securities laws.

Plaintiff alleges the following based upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's filings with the United States Securities and Exchange Commission ("SEC"), news articles, press releases, conference call transcripts, analysts' reports, and other publicly available information.

## <u>NATURE OF THE ACTION</u>

1.      This is a shareholder derivative action brought against certain current and former Company officers and members of the Company's Board of Directors (the "Board") that seeks to remedy wrongdoing committed by the Individual Defendants from February 3, 2022 through October 31, 2023 (the "Relevant Period"), and which caused substantial damage to the Company and its shareholders.

2.      Estée describes itself as "one of the world's leading manufacturers, marketers, and sellers of quality skin care, makeup, fragrance, and hair care products." The Company offers products under several brands, including Estée Lauder, Aramis, Clinique, Lab Series, Origins, La Mer, Bobbi Brown Cosmetics, and Aveda. The Company sells its products through department stores, upscale perfumeries, pharmacies, salons, and spas.

3.      The Company also engages in "travel retail," wherein its products are made

available in airports, cruise ships, and other duty-free locations. The Company's travel retail products are often bought in bulk and resold in mainland China, among other places. As a result, the Company's travel retail business is particularly reliant on sales in the Asia/Pacific region.

4.      In early 2022, regulators in China and elsewhere implemented new restrictions on resellers that rendered the resale business less profitable. The regulations led to a substantial decrease in the resale of Estée's products, causing inventory accumulation and stagnating sales growth.

5.      Despite these issues, throughout the Relevant Period, the Individual Defendants issued statements emphasizing the purported strength of the Company's travel retail business in China and the Asia/pacific region. These statements were false or misleading statements and failed to disclose material facts relating to Estée's business and prospects. Specifically, the Individual Defendants failed to disclose that: (1) Estée's revenue growth prior to the Relevant Period was largely dependent on the resale market; (2) resellers were purchasing fewer Estée products due to new regulations; (3) as a result, Estée was experiencing inventory accumulation and sales were stagnating; (4) Estée was forced to offload its excess inventory at discounted prices, driving down its margins; and (5) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

6.      On November 1, 2023, Estée filed a Quarterly Report on Form 10-Q with the SEC (the "3Q 2023 10-Q"). The 3Q 2023 10-Q disclosed that the Company had suffered a decline in net sales of its skin care and makeup products and provided the following explanation:

> These decreases primarily reflect a decline in our Asia travel retail business, primarily due to our and our retailers' actions to reset retailer inventory levels, and changes in government and retailer policies related to unstructured market activity, that led to lower product shipments compared to the prior-year period. The net sales decrease in Estée Lauder was also due to incremental headwinds from a slower-than-expected recovery of overall prestige beauty in mainland China.

7.      On this news, the price of Estée common stock declined almost 19% in one day of trading, from a share price of $128.87 on October 31, 2023 to $104.51 on November 1, 2023, on unusually high trading volume.

8.      In light of the Individual Defendants' misconduct, the Company as well as Defendants Freda and Travis were named as defendants in multiple federal securities fraud class action lawsuits, which were consolidated and are now pending in the United States District Court for the Southern District of New York under the caption: *In re The Estée Lauder Co., Inc. Securities Litigation*, Case No. 1:23-cv-10669-AS (S.D.N.Y.) (the "Securities Class Action.") The Securities Class Action has further subjected Estée to the need to undertake internal investigations and the need to implement adequate internal controls, as well as exposed the Company to massive class-wide liability. Moreover, on March 12, 2024, the Company announced that its Executive Vice President and General Counsel, Deirdre Stanley, would be stepping down effective April 2, 2024.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b), 20(a), and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), 78t(a), and § 78u-4(f)).

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

the United States mail, and the facilities of a national securities market.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Nominal Defendant Estée is headquartered in this District and conducts substantial business in this District. Further, a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District.

## **PARTIES**

14.     Plaintiff is a current shareholder of Estée and has continuously held Estée shares at all relevant times.

15.     Nominal Defendant Estée is a Delaware corporation that maintains its principal executive offices at 767 Fifth Avenue, New York, New York 10153. Estée's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "EL."

16.     Defendant Freda has served as Estée's Chief Executive Officer ("CEO") since July 2009 and as its President since March 2008. According to the Company's Schedule 14A proxy statement filed on September 28, 2023 (the "2023 Proxy Statement"), Defendant Freda received $21,811,244 in compensation from the Company during the fiscal year ended June 30, 2023. Freda is named as a defendant in the Securities Class Action.

17.     Defendant Ronald Lauder has served as a company director since 2016. Defendant Ronald Lauder also served as Chairman of the Board from 1968 until 2002. As of July 31, 2023, Defendant Ronald Lauder beneficially owned 4,848,545 shares of Estée Common Stock, constituting 3.2% of the Company's total voting power.[1]  Ronald Lauder is the son of Estée's founders, Estée and Joseph Lauder. He is the brother of Defenant Leonard Lauder and the father of Defendant Jane Lauder.

---

[1] The value of the Individual Defendants' holdings of Estée stock are based on the price per share of $180, the closing price of the Company's stock on July 31, 2023.

18.     Defendant Leonard Lauder served as a company director from 1958 until November 2023. Leonard A. Lauder's family beneficially owns the LAL Family Corporation, the beneficial owner of 80,437,628 shares of Estée Class B Common Stock as of July 31, 2023, constituting 54.1% of the Company's total voting power. Ronald Lauder is the son of Estée's founders, Estée and Joseph Lauder. He is the brother of Defendant Ronald Lauder and the father of Defendants William Lauder and Gary Lauder.

19.     Defendant William Lauder is the Chairman of the Board and has served as a Company director since 1996. Defendant William Lauder serves as a member of the Nominating and Environmental, Social and Governance Committee. Defendant William Lauder has previously served as Estée's CEO between 2004 and 2009, as its President between 2004 and 2008, and as its Chief Operating Officer between 2003 and 2004. According to the 2023 Proxy Statement, Defendant William Lauder received $7,803,992 in compensation from the Company during the fiscal year ended June 30, 2023. As of July 31, 2023, Defendant William Lauder beneficially owned 8,558,835 shares of Estée Common Stock, constituting 5.7% of the Company's total voting power. William Lauder is the grandson of the founders of Estée, son of Defendant Leonard Lauder, and brother of Defendant Gary Lauder.

20.     Defendant Jane Lauder has served as a Company director since 2009. As of July 31, 2023, Defendant Jane Lauder beneficially owned 22,507,133 shares of Estée Common Stock, constituting 15% of the Company's total voting power. Jane Lauder is the granddaughter of the founders of Estée and daughter of Defendant Ronald Lauder.

21.     Defendant Barshefsky has served as a Company director since 2001 and serves as a member of the Compensation Committee. According to the 2023 Proxy Statement, Defendant Barshefsky received $382,014 in compensation from the Company during the fiscal year ended

June 30, 2023.

22.     Defendant Dong has served as a Company director since 2022 and serves as a member of the Audit Committee. According to the 2023 Proxy Statement, Defendant Dong received $286,926 in compensation from the Company during the fiscal year ended June 30, 2023.

23.     Defendant Fribourg has served as a Company director since 2006 and serves as Chair of the Compensation Committee and as a member of the Audit Committee. According to the Company's public filings, Defendant Fribourg received $309,926 in compensation from the Company during the fiscal year ended June 30, 2023.

24.     Defendant Hyman has served as a Company director since 2018 and serves as a member of the Audit Committee and the Nominating and Environmental, Social and Governance Committee. According to the 2023 Proxy Statement, Defendant Hyman received $286,926 in compensation from the Company during the fiscal year ended June 30, 2023.

25.     Defendant Nuñez has served as a member of the Board since 2022 and serves as a member of the Audit Committee and the Compensation Committee. According to the 2023 Proxy Statement, Defendant Nuñez received $586,926 in compensation from the Company during the fiscal year ended June 30, 2023.

26.     Defendant Parsons has served as a Company director since 1999 and serves as a member of the Compensation Committee and the Nominating and Environmental, Social and Governance Committee. According to the 2023 Proxy Statement, Defendant Parsons received $290,926 in compensation from the Company during the fiscal year ended June 30, 2023.

27.     Defendant Rothschild has served as a Company director since 2000 and serves as a member of the Nominating and Environmental, Social and Governance Committee. According to the Company's public filings, Defendant Rothschild received $282,926 in compensation from

the Company during the fiscal year ended June 30, 2023.

28.    Defendant Sternlicht has served as a Company director since 2004 and serves as a member of the Nominating and Environmental, Social and Governance Committee. According to the 2023 Proxy Statement, Defendant Sternlicht received $282,926 in compensation from the Company during the fiscal year ended June 30, 2023.

29.    Defendant Tejada has served as a Company director since 2018 and serves as Chair of the Nominating and Environmental, Social and Governance Committee. According to the 2023 Proxy Statement, Defendant Tejada received $283,926 in compensation from the Company during the fiscal year ended June 30, 2023.

30.    Defendant Zannino has served as a Company director since 2010 and serves as Chair of the Audit Committee. According to the 2023 Proxy Statement, Defendant Zannino received $313,926 in compensation from the Company during the fiscal year ended June 30, 2023.

31.    Defendant Bravo served as a Company director from 2003 until November 2022. According to the Schedule 14A Proxy Statement filed on September 29, 2022, Defendant Bravo received $276,911 in compensation from the Company during the fiscal year ended June 30, 2022.

32.    Defendant Christianson served as a Company director from 2011 until November 2023. According to the 2023 Proxy Statement, Defendant Christianson received $297,926 in compensation from the Company during the fiscal year ended June 30, 2023.

33.    Defendant Gary Lauder has served as a member of the Board since 2023. Defendant Gary Lauder is the grandson of Company founders Estée and Joseph Lauder, the son of Defendant Leonard Lauder, and the brother of Defendant William Lauder.

34.    Defendant Travis serves as Estée's Executive Vice President and Chief Financial Officer ("CFO"). Travis is named as a defendant in the Securities Class Action.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

35.    By reason of their positions as officers and directors of Estée, and because of their ability to control the business and corporate affairs of Estée, the Individual Defendants owed Estée and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Estée in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Estée and its shareholders so as to benefit all shareholders equally.

36.    Each director and officer of the Company owes to Estée and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

37.    To discharge their duties, the officers and directors of Estée were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

38.    The Individual Defendants, because of their positions of control and authority as officer and directors of Estée, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

39.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed the Company and its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Estée, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual

9

Defendants were aware or should have been aware posed a risk of serious injury to the Company.

40.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's supply chain issues resulting from regulations in the travel retail industry. The Individual Defendants also had a fiduciary duty to disclose the material information necessary to prevent other public statements, including those in its regulatory filings with the SEC, from being materially false, so that the market price of the Company's common stock was based upon truthful, accurate, and fairly presented information.

41.     To discharge their duties, the officers and directors of Estée were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Estée were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Estée's own Code of Conduct;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Estée conducted its operations, and, upon

receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

        (d)      establish and maintain systematic and accurate records and reports of the business and internal affairs of Estée and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

        (e)      maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Estée's operations would comply with all applicable laws and Estée's public statements, financial statements and regulatory filings were accurate;

        (f)      adequately monitor the Company's officers and employees to ensure their public statements about the Company were complete and accurate;

        (g)      refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

        (h)      examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

        42.      The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Estée.

        43.      Each of the Individual Defendants breached his or her fiduciary duties as alleged

herein, both individually and in concert with the other Defendants.

## THE CODE OF CONDUCT

44.     Estée maintains a Code of Conduct (the "Code"). The Code opens with a message

from Defendants Freda and W. Lauder that states: "As a global leader, our Company is committed

to operating responsibly and building a sustainable business based on uncompromising ethics,

integrity, fairness, and trust."

45.     The Code then states that it applies to:

> all employees and officers of The Estée Lauder Companies, Inc., including our
> global subsidiaries and affiliates, and the members of our Board of Directors. Our
> Company also expects our suppliers, independent contractors, consultants,
> temporary workers, and distributors to follow applicable laws when acting on
> behalf of our Company, and we expect our suppliers to comply with our Supplier
> Code of Conduct.

46.     The Code contains a section titled "Everyone's Responsibilities," which states, in

pertinent part: "We expect everyone to whom our Code applies to conduct our business with

uncompromising ethics and integrity, in compliance with the laws and regulations of the countries

where we operate."

47.     The Code also contains a section titled "Ensure the Integrity of Our Books,

Records and Financial Reports," which states, in pertinent part:

> As a publicly traded company, by law, we are required to publicly disclose certain
> important information about our Company. When we publicly disclose this
> information, it is our responsibility to do so in a fair, complete, accurate, timely,
> and understandable way. We are legally required to be honest and accurate in our
> financial records, and regulators, investors, and others rely on us to report financial
> information truthfully, completely, and timely.
> We must keep accurate books and records, including legal documents, that maintain
> the integrity of our financial reporting. Employees are prohibited from:
>
> • Making false, misleading, or incomplete statements in connection with
>   an audit of our Company or a filing with the U.S. Securities and Exchange
>   Commission or other government body.

**THE AUDIT COMMITTEE CHARTER**

48.     Estée also maintains an Audit Committee Charter (the "Charter"), which states

that the Audit Committee is to "reviews the internal and external accounting and audit processes

for The Estée Lauder Companies, Inc. and is directly responsible for the appointment,

compensation, retention, and oversight of the Company's independent auditors."

49.     In a section titled "Committee Responsibilities," the Charter states that the Audit

Committee is responsible for the:

1. Integrity of the Company's financial statements;
2. Company's compliance with legal and regulatory requirements;
3. Independent auditor's qualifications and independence;
4. Performance of the Company's internal audit function and independent
   auditor; and
5. Company's policies for risk assessment and risk management.

50.     In a section titled "Audit and Audit-Related Matters," the Charter states that the

Audit Committee shall:

> Review and discuss with management and the independent auditor the annual
> audited financial statements and the quarterly financial statements to be included in
> the Company's periodic reports, including the disclosures under "Management's
> Discussion and Analysis of Financial Condition and Results of Operations," and
> review with the independent auditor the matters required to be discussed by
> applicable auditing standards."

51.     The Charter contains a section titled "Internal Audit," which states that the Audit

Committee shall: "Approve and oversee the charter, policies, and scope of audit plans of the

Company's internal audit department."

52.     In a section titled "Risk Oversight," the Charter states that the Audit Committee

shall: "Review and discuss with management, the independent auditor, and the Board the

Company's policies with respect to risk assessment and risk management, as well as any

significant risks or exposures and the steps management has taken to monitor and control such

exposures."

53.    In a subsection titled "Other Matters," the Charter states that the Audit Committee

shall:

> In connection with the quarterly certifications by the Chief Executive Officer and Chief Financial Officer ("CFO"), receive reports from such officers regarding (i) significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize, and report financial data; (ii) material weaknesses in internal controls; and (iii) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

54.    In committing the wrongful acts alleged herein, the Individual Defendants have

pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

and conspired with one another in furtherance of their wrongdoing. The Individual Defendants

caused the Company to conceal the true facts as alleged herein. The Individual Defendants further

aided and abetted and/or assisted each other in breaching their respective duties.

55.    The purpose and effect of the conspiracy, common enterprise, and/or common

course of conduct were, among other things, to: (i) facilitate and disguise the Individual

Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii)

conceal adverse information concerning the Company's operations, financial condition, future

business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

56.    The Individual Defendants accomplished their conspiracy, common enterprise,

and/or common course of conduct by causing the Company purposefully, recklessly, or with gross

negligence to engage in improper accounting methods, conceal material facts, fail to correct such

misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course

of conduct, the Individual Defendants collectively and individually took the actions set forth

herein. The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

57.    Each of the Individual Defendants aided, abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

58.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Estée and was at all times acting within the course and scope of such agency.

## SUBSTANTIVE ALLEGATIONS

**Materially False and Misleading Statements Issued During the Relevant Period**

59.    On February 3, 2022, Estée issued a press release announcing financial results for the fiscal quarter ended December 31, 2021.

60.    Also on February 3, 2022, the Company held an earnings call. During the earnings, Defendant Freda stated that the Company was "prosper[ing] in the East with Chinese consumers as well as in global travel retail[.]" Further on the call, Defendant Freda stated that management was "excited about the long-term growth opportunity in the vibrant Asia Pacific region and most notably in China."

61.    Further on the earnings call, Defendant Travis touted the Company's business in Hainan, a popular vacation destination in China, stating that it "continues to be a very strong driver

of our travel retail business."

62.    On May 3, 2022, Estée issued a press release announcing financial results for the fiscal quarter ended March 31, 2022.

63.    Also on May 3, 2022, the Company held an earnings call. During the earnings call, Defendant Freda attributed the Company's increased net sales to "demand across channels from brick-and-mortar to online and travel retail" and stated that "China consumer demand underlining this moment of COVID restrictions is strong."

64.    Also on the earnings call, Defendant Travis further assured investors that the Company "expect[s] continued growth at retail in both Mainland China and Hainan." Defendant Freda agreed that Estée's "confidence into Hainan in the future is unchanged."

65.    On August 18, 2022, Estée issued a press release (the "August 2022 Press Release") announcing financial results for the fiscal quarter and year ended June 30, 2022. The August 2022 Press Release reported a 9% increase in net sales and an 8% increase in organic net sales from the prior-year period. The Company further announced that it would be implementing strategic price increases, mix optimization, and cost savings in certain areas to mitigate the impacts of inflation, supply chain disruptions, and COVID-19 headwinds.

66.    On August 18, 2022, the Company held an earnings call. On the earnings call, Defendant Freda states that the Company was anticipating robust growth and profitability for the upcoming year, stating that "our more effective cost structure, pricing power, and strong cash generation should afford us the flexibility to successfully navigate the ongoing complex environment[.]" Defendant Freda continued on the call, stating that Estée's management was "confident in the long-term growth opportunity in Mainland China, evidenced by our expansion into almost 100 new doors and 3 additional cities in fiscal year 2022."

67.     Further on the earnings call, in response to an analyst's question regarding the

Company's "underlying market share performance in China . . . as supply returns to normal,"

Defendant Freda stated:

> [W]e do expect for the full-year China to go back growing double-digit. We expect
> strong recovery in Hainan in the second part, in the second semester of the fiscal
> year for sure, a gradual recovery before. That's our assumption, which obviously is
> going to give us also results in market share.
>
>                       \* \* \*
>
> We believe the Hainan, despite the current lockdown, which is obviously painful
> in the short term, but is a super strong opportunities for the long term. The power
> of Hainan in the future remain intact, and we have strong presence and market share
> in this operation.

68.     On August 24, 2022, Estée filed its annual report on Form 10-K with the SEC (the

"2022 10-K") for the fiscal year ended June 30, 2022. The 2022 10-K was signed by Defendant

Travis in her capacity as CFO and on behalf of Defendants Freda, William Lauder, Leonard

Lauder, Ronald Lauder, Jane Lauder, Barshefsky, Bravo, Christianson, Dong, Fribourg, Hyman,

Nuñez, Parsons, Rothschild, Sternlicht, Tejada, and Zannino. Attached to the 2022 10-K were

signed certifications pursuant to the Sarbanes-Oxely Act of 2002 by Defendants Freda and Travis.

69.     The 2022 10-K contained the following risk disclosure regarding the Company's

travel retail business: "Events that impact consumers' willingness or ability to travel or purchase

our products while traveling may impact our business, including travel retail, a significant

contributor to our overall results, and our strategy to market and sell products to international

travelers at their destinations."

70.     In regards to the Company's distribution strategy, the 2022 10-K stated in part:

> We approach distribution strategically by product category and location and seek
> to optimize distribution by matching our brands with appropriate opportunities
> while seeking to maintain high productivity per door. We are expanding our
> brands in online and travel retail, which we believe will be higher growth
> channels in the long term.

71.     The statements identified above in ¶¶ 60-70 were materially false and misleading and failed to disclose material facts relating to Estée's business and prospects. Specifically, the Individual Defendants failed to disclose that: (1) Estée's revenue growth prior to the Relevant Period was largely dependent on the resale market; (2) resellers were purchasing fewer Estée products due to new regulations; (3) as a result, Estée was experiencing inventory accumulation and sales were stagnating; (4) Estée was forced to offload its excess inventory at discounted prices, driving down its margins; and (5) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

**The Truth Emerges**

72.     On November 2, 2022, the Company issued a press release (the "November 2022 Press Release") announcing financial results for the fiscal quarter ended September 30, 2022. The November 2022 Press Release provided revised 2023 financial guidance, forecasting that net sales would decrease "between 19% and 17% versus the prior-year." The press release included a quote from Defendant Freda explained that "[f]or fiscal 2023, we are lowering our outlook primarily to reflect tighter inventory management in Asia travel retail[.]"

73.     The press release continued to discuss the Company's outlook for the second quarter of 2023 and full year, stating in part:

> The Company expects the remainder of the fiscal year to be pressured by the temporary disruptions due to headwinds from the COVID-19 restrictions in China, the strengthening of the U.S. dollar, record-high inflation, supply chain disruptions, and the risk of a slowdown in certain markets globally.

> * * *

> The Company expects its first-half results to be negatively impacted by the ongoing challenges from the COVID-related restrictions affecting Asia travel retail, including tightening of retailer inventory, and mainland China. The Company also expects the tightening of inventory in the United States to negatively impact its

first-half results.

74.     On this news, the price of Estée common stock declined more than 8% in one day, closing at $189.96 on November 2, 2022.

75.     Following the November 2022 Press Release, the Individual Defendants continued to conceal the full extent of the Company's problems. During an earnings call held on November 2, 2022, Defendant Freda stated that Estée leadership "expect[s] a gradual sequential improvement to low double-digit organic sales growth and high-teens adjusted EPS growth on a reported basis in the second half of fiscal year 2023. As these pressures begin to abate, the momentum in other areas of our business builds and our ongoing investments drive growth."

76.     On February 2, 2023, Estée issued a press release (the "February 2023 Press Release") announcing its financial results for the fiscal quarter ended December 31, 2022. The February 2023 Press Release provided further revised guidance for fiscal year 2023 due, stating as follows:

> For fiscal 2023, we are lowering our outlook given the November and December disruption to travel and staffing levels in Hainan that slowed the expected normalization of inventory and the recently-announced potential roll-back of COVID-related supportive measures in Korea duty free.

77.     On this news, the price of Estée common stock declined 7% in one day, closing at $261.17 on February 6, 2023.

78.     During an earnings call held on February 2, 2023, in response to an analyst's question about Estée's supply chain management in China, Defendant Travis continued to downplay the problem, stating:

> One, inventory levels are still coming down in Hainan. They are almost at the level that we would expect sales to accelerate. So yes, you should start to see an inventory build related to the shipments that we expect to see in Q4.

> In Korea, again, the pace is a little bit more uncertain given the transitory nature of

what's going on right now. So we do anticipate, as I mentioned in the prepared remarks, that we will start to see resumption of travel in Korea. And depending on the pace of that resumption, that will depend on the amount of shipments that we have in the quarter. But we have taken obviously an assumption there. We are sitting on a decent amount of inventory even in our own warehouses to supply the sales that we expect to see in the fourth quarter.

79.    Also on this earnings call, Defendant Freda stated the following regarding Estée's

market share and retail sales in China:

And so, China, the results in the quarter were pretty good. We built significant market share. So the overall market in China was negative double digit. Our net sales were – and our retail was negative single digit, and we built market share in every single category. So in most risers, we build market share in makeup, in fragrance, in health care, in every aspect. Now this, for us, is a very important sign that the – our brands are really working. The aspirational value of our brands remains very, very strong, which in the moment of reopening is a very strong position to be. So excellent performance relatively to market.

80.    On May 3, 2023, Estée issued a press release (the "May 2023 Press Release")

announcing financial results for the fiscal quarter ended March 31, 2023. The May 2023 Press

Release again provided lowered guidance for fiscal year 2023 due to persistent issues in the

Company's travel retail business:

As the shape of recovery from the pandemic for Asia travel retail comes into better focus, it is proving to be both far more volatile than we expected and more gradual relative to what we experienced in other regions. We are, therefore, lowering our organic sales and EPS outlook for fiscal 2023 to reflect significantly greater headwinds in our fourth quarter than we expected in February.

81.    The May 2023 Press Release continued to discuss travel in Asia, specifically

Hainan, stating in part:

Asia travel retail business continued to be pressured by the slower than anticipated recovery from the COVID pandemic. Specifically, in Hainan, while traffic into the island exceeded prior year levels, conversion of travelers to consumers in prestige beauty lagged. This led to the slower than anticipated depletion of elevated levels of retailer inventory and, therefore, lower replenishment orders.

82.    During an earnings call held on May 3, 2023, Defendant Freda stated the following

in response to an analyst question regarding the Company's reduced guidance:

[I]n theory it's really an issue of inventories versus pace of recovery. Another proof of that is our retail in travel retails is so much stronger than our net. So, you have a minus 45% in quarter three versus a single-digit decline in retail. So there is a lot of inventory absorption which is going on with the recovery. And, a lot of the speed of this absorption will depend on the speed of the recovery that we have in front in us. We are estimating that given the trend in this period in the quarter four, retail will go positive, and then, the absorption will continue to improve over time, and definitely continue in Q1 of next fiscal year.

83.    Also during the earnings call, Defendant Freda further claimed that "the challenges in travel retail are abating."

84.    Analysts at Deutsche Bank reacted to the Company lowering its guidance for the third consecutive quarter, stating "[w]hile we appreciate the complexity of current challenges in EL's travel retail (TR) business, the sheer magnitude of the reduced outlook and associated operating deleverage raises questions related to EL's capabilities vis-à-vis demand forecasting, visibility, and supply-chain agility in its most profitable geography and channel."

85.    On this news, the price of Estée common stock declined 17% in one day, closing at $202.70 on May 3, 2023.

86.    On August 18, 2023, Estée issued a press release (the "August 2023 Press Release") announcing financial results for the fiscal quarter and year ended June 30, 2023. The August 2023 Press Release identified a 10% decrease in net sales from the prior year, "primarily driven by Asia travel retail in Hainan and Korea."

87.    On this news, the price of Estée common stock declined 3.3%, closing at $156.69 on August 18, 2023.

88.    Despite the consistent decline in the stock price, the Individual Defendants continued to issue false and misleading statements. During an August 18, 2023 earnings call, Defendant Freda claimed that Estée leadership believed the Company was "well positioned to return to organic sales growth and improve profitability." Defendant Freda further stated that Estée

had "created the base of much more information and timely information to take the right decisions in coordination[,]" regarding its travel retail business.

89.     Then, on November 1, 2023, Estée issued a press release (the "November 2023 Press Release") announcing financial results for the fiscal quarter ended September 30, 2023. The November 2023 Press Release reported a decline in net sales attributable to its Asia travel retail business. The Company further disclosed that inventory issues were preventing it from effectively responding to changes in the market. In connection with these disclosures, Estée decreased its net sales estimate for fiscal year 2024.

90.     On this news, the price of Estée common stock declined nearly 19% in one day, closing at $104.51 on November 1, 2023.

## DAMAGES TO ESTÉE

91.     As a direct and proximate result of the Individual Defendants' misconduct, Estée has expended and will continue to expend many millions of dollars.

92.     Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

93.     Such expenditures will also include costs incurred in any internal investigation pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

94.     As a direct and proximate result of the Individual Defendants' conduct, Estée has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's actions and

misrepresentations and the Individual Defendants' breaches of fiduciary duties.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

95.     Plaintiff brings this action derivatively in the right and for the benefit of Estée to redress injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties as directors and/or officers of Estée.

96.     Estée is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

97.     Plaintiff will adequately and fairly represent the interests of Estée and its stockholders in enforcing and prosecuting its rights.

98.     Plaintiff is a current shareholder of Estée and has been a continuous Estée shareholder at all relevant times.

99.     A pre-suit demand on the Board is futile and, therefore, excused. At the time this action was commenced, the Board was comprised of the following fifteen individuals: Defendants Barshefsky, Dong, Freda, Fribourg, Hyman, Nuñez, Parsons, Rothschild, Sternlicht, Tejada, Zannino, Jane Lauder, Ronald Lauder, William Lauder, and Gary Lauder (the "Director Defendants"). Accordingly, Plaintiff is only required to show that eight directors of the current Board cannot exercise independent, objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

100.     Additional reasons that demand on Defendant Freda is futile follow. Defendant

Freda has served as Estée's CEO since July 2009 and as its President since March 2008. The Company provides Defendant Freda with significant compensation as detailed above. Defendant Freda authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. Defendant Freda is a defendant in the Securities Class Action. Moreover, the Company conceded in the 2023 Proxy Statement that Defendants Freda is not independent under NYSE rules and the Company's Independent Director Standards. For these reasons, Defendant Freda breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

101.    Additional reasons that demand on Defendant Ronald Lauder is futile follow. Defendant Ronald Lauder has served as a company director since 2016. The Company provides Defendant Ronald Lauder with significant compensation as detailed above. Defendant Ronald Lauder authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. Moreover, the Company conceded in the 2023 Proxy Statement that Defendant Ronald Lauder is not independent under NYSE rules and the Company's Independent Director Standards. For these reasons, Defendant Ronald Lauder breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

102.    Additional reasons that demand on Defendant William Lauder is futile follow. Defendant William Lauder has served as a Company director since 1996, served as the Company's CEO from 2004 to 2009, and served as its President from 2004 to 2008. The Company provides Defendant William Lauder with significant compensation as detailed above. Defendant William Lauder authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. Moreover, the Company conceded in the 2023 Proxy Statement that Defendant William Lauder is not independent under NYSE rules and the Company's Independent Director Standards. For these reasons, Defendant William Lauder breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

103.    Additional reasons that demand on Defendant Jane Lauder is futile follow. Defendant Jane Lauder has served as a Company director since 2009. The Company provides Defendant Jane Lauder with significant compensation as detailed above. Defendant Jane Lauder authorized her signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor controls over reporting, and consciously disregarded her duties to protect corporate assets. Moreover, the Company conceded in the 2023 Proxy Statement that Defendant Jane Lauder is not independent under NYSE rules and the Company's Independent Director Standards. For these reasons, Defendant Jane Lauder breached her fiduciary duties, faces a substantial likelihood of

liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

104.    Additional reasons that demand on Defendant Barshefsky is futile follow. Defendant Barshefsky has served as a Company director since 2001. The Company provides Defendant Barshefsky with significant compensation as detailed above. Defendant Barshefsky authorized her signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor controls over reporting, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Barshefsky breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

105.    Additional reasons that demand on Defendant Dong is futile follow. Defendant Dong has served as a Company director since 2022. The Company provides Defendant Dong with significant compensation as detailed above. Defendant Dong authorized her signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor controls over reporting, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Dong breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

106.    Additional reasons that demand on Defendant Fribourg is futile follow. Defendant Fribourg has served as a Company director since 2006. The Company provides Defendant

Fribourg with significant compensation as detailed above. Defendant Fribourg authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Fribourg breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

107.     Additional reasons that demand on Defendant Hyman is futile follow. Defendant Hyman has served as a Company director since 2018. The Company provides Defendant Hyman with significant compensation as detailed above. Defendant Hyman authorized her signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor controls over reporting, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Hyman breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

108.     Additional reasons that demand on Defendant Nuñez is futile follow. Defendant Nuñez has served as a Company director since 2022. The Company provides Defendant Nuñez with significant compensation as detailed above. Defendant Nuñez authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and

consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Nuñez breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

109.    Additional reasons that demand on Defendant Parsons is futile follow. Defendant Parsons has served as a Company director since 1999. The Company provides Defendant Parsons with significant compensation as detailed above. Defendant Parsons authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. Moreover, the Company conceded in the 2023 Proxy Statement that Defendant Parsons is not independent under NYSE rules and the Company's Independent Director Standards. For these reasons, Defendant Parsons breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

110.    Additional reasons that demand on Defendant Rothschild is futile follow. Defendant Rothschild has served as a Company director since 2000. The Company provides Defendant Rothschild with significant compensation as detailed above. Defendant Rothschild authorized his signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor controls over reporting, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Rothschild breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore,

excused.

111.     Additional reasons that demand on Defendant Sternlicht is futile follow. Defendant Sternlicht has served as a Company director since 2004. The Company provides Defendant Sternlicht with significant compensation as detailed above. Defendant Sternlicht authorized his signature the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Sternlicht breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

112.     Additional reasons that demand on Defendant Tejada is futile follow. Defendant Tejada has served as a Company director since 2018. The Company provides Defendant Tejada with significant compensation as detailed above. Defendant Tejada authorized her signature on the 2022 10-K, which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor controls over reporting, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Tejada breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

113.     Additional reasons that demand on Defendant Zannino is futile follow. Defendant Zannino has served as a Company director since 2010. The Company provides Defendant Zannino with significant compensation as detailed above. Defendant Zannino authorized his signature on

the 2022 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor controls over reporting, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Tejada breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

114.    Additional reasons that demand on Defendant Gary Lauder is futile follow. Defendant Gary Lauder has served as a Company director since 2023. The Company provides Defendant Gary Lauder with significant compensation as detailed above. Moreover, the Company conceded in the 2023 Proxy Statement that Defendant Gary Lauder is not independent under NYSE rules and the Company's Independent Director Standards As such, Defendant Gary Lauder cannot independently consider any demand against the Company. This lack of independence and the financial benefits received by Defendant Gary Lauder render him incapable of impartially considering a demand to commence and vigorously prosecute this action.

115.    Additional reasons that demand upon the Board is futile follow.

116.    Demand in this case is excused because each Director Defendant derives substantial revenue from the Company, control the company, and are indebted to each other. These conflicts of interest have precluded the Director Defendants from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Significantly, none of the Director Defendants have taken remedial action to redress the conduct alleged herein.

117.    Demand is excluded as defendants Jane Lauder, Ronald Lauder, William Lauder, Leonard Lauder, and Gary Lauder are members of the same family, as such, they are particularly

indebted to each other. Accordingly, Jane Lauder, Ronald Lauder, William Lauder, and Gary Lauder are incapable of making an independent and disinterested decision to initiate and vigorously prosecute this action. Moreover, given the control and influence members of the Lauder family have over the Company, the other Director Defendants who are not members of the Lauder family are also incapable of exercising independent and disinterested decision to institute and prosecute an action against the members of the Lauder family.

118.    Further, Defendants Dong, Fribourg, Hyman, Nuñez, Zannino, and Tejada serve as members of the Audit Committee and/or served as members of the Audit Committee during the Relevant Period and, pursuant to the Audit Committee Charter, were specifically charged with, *inter alia*, the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements. Throughout the Relevant Period, however, Defendants Dong, Fribourg, Hyman, Nuñez, Zannino, and Tejada breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the Company's internal controls as alleged above. Therefore, Defendants Dong, Fribourg, Hyman, Nuñez, Zannino, and Tejada cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

119.    The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders,

authorized, and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

120.    As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Estée, the Director Defendants knew, or should have known, the material facts surrounding the Company's supply chain issues resulting from regulations in the travel retail industry.

121.    Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company. Indeed, all of the Director Defendants benefitted directly from the wrongdoing alleged herein. Specifically, the Director Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Estée stock and stock options they held.

122.    The Director Defendants, as members of the Board, were and are subject to the Company's Code. The Code goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to Estée's standards of business conduct. The Director Defendants violated the Code because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

123.    The Director Defendants' conduct described herein and summarized above could

not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

124.    The acts complained of herein constitute violations of fiduciary duties owed by Estée's officers and directors, and these acts are incapable of ratification.

125.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Estée. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Estée, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

126.    If there is no directors' and officers' liability insurance, then the Director

Defendants will not cause Estée to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

127.    Accordingly, for all of the reasons set forth above, all of the current directors cannot consider a demand with disinterestedness and independence. Consequently, a pre-suit demand on the Board is futile and excused.

## FIRST CLAIM

### Against the Individual Defendants for Violations of
### Section 10(b) of the Exchange Act and Rule 10b-5

128.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

129.    The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

130.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

131.    The Individual Defendants employed devices, schemes and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Estée not misleading.

132.    The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Estée.

133.    The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were directly responsible for the false and misleading statements and omissions disseminated to the public through press releases and filings with the SEC.

134.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Estée, their control over, and/or receipt and/or modification of Estée's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Estée, participated in the fraudulent scheme alleged herein.

135.    As a result of the foregoing, the market price of Estée common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff, relied on the statements described above and/or the integrity of the market price of Estée common stock in purchasing Estée common stock at prices that were artificially inflated as a result of these false and misleading statements and was damaged thereby.

136.    By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

137.    Plaintiff, on behalf of Estée, has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

138.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

139.    The Individual Defendants, by virtue of their positions with Estée and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Estée and each of its controlling shareholder, officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence and exercised the same to cause Estée to engage in the illegal conduct and practices complained of herein.

140.    Plaintiff, on behalf of Estée, has no adequate remedy at law.

## THIRD CLAIM

### Against Defendants Freda and Travis for Contribution Under
### Sections 10(b) and 21D of the Exchange Act

141.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

142.    The conduct of Defendants Freda and Travis as described herein has exposed the Company to significant liability under various federal securities laws by their misconduct.

143.    Estée, Freda, and Travis are named as defendants in the Securities Class Action that alleges and asserts claims arising under the federal securities laws. Estée is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

144.    If Estée is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Freda and Travis as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. Estée is entitled to contribution and indemnification from Defendants Freda and Travis in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

145.    As officers and/or directors, Defendants Freda and Travis had the power or ability to, and did, control or influence, either directly or indirectly, Estée's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

146.    Defendants Freda and Travis are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

147.    Defendants Freda and Travis have damaged the Company and are liable to the Company for contribution.

148.    As such, Estée is entitled to receive all appropriate contribution or indemnification from Defendants Freda and Travis.

### FOURTH CLAIM

**Against the Individual Defendants for Breach of Fiduciary Duty**

149.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

150.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest

obligation of good faith, fair dealing, loyalty, and due care.

151.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

152.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

153.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

154.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

155.    Plaintiff, on behalf of Estée, has no adequate remedy at law.

## FIFTH CLAIM

### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

156.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

157.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

158.    Plaintiff on behalf of Estée has no adequate remedy at law.

## SIXTH CLAIM

### Against the Individual Defendants for Unjust Enrichment

159.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

160.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Estée.

161.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Estée that was tied to the performance or artificially inflated valuation of Estée, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

162.    Plaintiff, as a shareholder and a representative of Estée, seeks restitution from the

Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

163.    Plaintiff, on behalf of Estée, has no adequate remedy at law.

## SEVENTH CLAIM

### Against the Individual Defendants for Waste of Corporate Assets

164.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

165.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

166.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, inter alia: (a) paying and colleting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Action.

167.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

168.    Plaintiff, on behalf Estée, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual

Defendants do not participate therein or benefit thereby;

B.     Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.     Awarding punitive damages;

D.     Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: March 15, 2024          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

## <u>VERIFICATION</u>

I, Hugues Gervat am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct. 2/16/2024

DocuSigned by:

Hugues Gervat

2F6AF3BA1AB040E...

Hugues Gervat